IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON DICKINSON AND COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TYCO HEALTHCARE GROUP LP, ) <br> ) <br> Defendant. ) | Civil Action No. 02-1694 GMS |

### MEMORANDUM

**I. INTRODUCTION**

This matter comes before the court on the renewed motion of the defendant, Tyco Healthcare Group LP ("Tyco"), for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure 50(b). Much of the factual and procedural background of this matter has been recited extensively in the court's prior Memoranda and Orders. As such and because the court writes primarily for the parties, the court will address only the relevant facts herein.

**II. STANDARD OF REVIEW**

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v.. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). In conducting such an analysis, "the court may not determine the credibility of the witnesses nor 'substitute its choice for that of the jury between conflicting elements of the evidence.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 409 F. Supp. 2d 536, 539 (D. Del. 2005) (quoting *Perkin-Elmer Corp.*, 732 F.2d at 893).

### III. DISCUSSION

In the motion presently before the court, Tyco challenges the jury's finding that it infringed the asserted claims of the '544 patent. A patent infringement analysis entails two steps: "(1) claim construction to determine the scope of the claims, followed by (2) determination of whether the properly construed claim encompasses the accused device." *Bai v. L & L Wings, Inc.*,

160 F.3d 1350, 1353 (Fed. Cir. 1998) (citations omitted). The first step, claim construction, is a matter of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The second step, the determination of infringement, is a question of fact. *Bai*, 160 F.3d at 1353. A patentee must establish literal infringement by a preponderance of the evidence. *See, e.g., Braun Inc. v. Dynamics Corp.*, 975 F.2d 815, 819 (Fed. Cir. 1992). "To establish literal infringement, every limitation set forth in a claim must be found in [the] accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Therefore, the court must determine whether substantial evidence supports the jury's finding that at least one of the limitations in each of the asserted claims is found in Tyco's accused devices, "exactly."

The invention of the '544 patent is a safety needle shield that is used to prevent accidental needle sticks to health care workers. At trial, Becton Dickinson and Company ("BD") asserted claims 1 and 24 against Tyco's Monoject Magellan safety needle and Tyco's Monoject Magellan safety blood collector (collectively, the "Monoject Magellan devices"). Claim 1[1] of the '544 patent reads:

1. A shieldable needle assembly comprising:

a needle cannula having a proximal end and a distal tip;

a guard having a proximal end, an opposed distal end and a side wall extending therebetween, said guard being slidably movable along said needle cannula from a first position substantially adjacent said proximal end of said needle cannula to a second position where said distal tip of said needle cannula is intermediate said opposed proximal and distal ends of said guard;

a hinged arm having proximal and distal segments articulated to one another for movement between a first position where said segments are substantially collapsed

---

[1] Claim 1 and claim 24 both contain the same language regarding the limitations at issue in the present case. Therefore, the court will use claim 1 as a representative claim.

> onto one another, said proximal segment of said hinged arm being articulated to a portion of said needle assembly adjacent said proximal end of said needle cannula, said distal segment of said hinged arm being articulated to said guard, said proximal and distal segments of said hinged arm having respective lengths for permitting said guard to move from said first position to said second position on said needle cannula, and for preventing said guard from moving distally beyond said second position; and
>
> spring means connected to said hinged arm for urging said guard along said needle cannula toward said second position.

The only issue for the jury to decide at trial was whether Tyco's Monoject Magellan devices contained the "spring means" element recited in claims 1 and 24. With respect to this limitation, the court instructed the jury as follows:

> [T]he court has determined that the meaning of these [spring means] limitations is: the hinged arm is connected to a spring that moves the guard along the needle cannula toward the second position. These "spring means" limitations mean that once the hinged arm is unlatched for the first time, the "spring means" must move the guard along the needle toward the needle tip. The spring is not required to move the guard all the way to the tip of the needle, but must by itself move the guard for some distance.

(D.I. 352 at 16.) Based on its review of the evidence, the jury found that Tyco's Monoject Magellan devices infringe claims 1 and 24 of the '544 patent.

Tyco contends that the jury's findings were not supported by substantial evidence. That is, Tyco argues that BD did not prove that the "spring means" limitation was met by the Monoject Magellan devices. According to Tyco, BD failed to prove that the living hinges of the devices are a spring when the devices are first used, BD failed to prove that any motion of the guard after unlatching was caused by the spring itself, and BD failed to prove that there was any movement of the guard toward the needle tip after unlatching. The court will address these arguments in turn.

### A. Whether a Reasonable Jury Could Find that the Living Hinges of Tyco's Monoject Magellan Devices Are Springs

Tyco first argues that JMOL of non-infringement of claims 1 and 24 is warranted because BD failed to prove that its Monoject Magellan devices have a spring. Tyco also points to the demonstration of BD's infringement expert, Dr. Charles A. Garris, Jr. ("Dr. Garris") and contends that it was flawed. The court is not persuaded by Tyco's argument and finds that Dr. Garris' testimony, in addition to the testimony of other witnesses supports the jury's conclusion that the living hinges of the Monoject Magellan devices are springs. Witnesses for both parties testified regarding the characteristics of a spring and the different types of springs that exist, including living hinges. Peter Bressler ("Bressler"), an industrial design consultant who worked on the BD Safetyglide product, testified that a living hinge is a thin piece of molded plastic that can be bent back and forth. (D.I. 374 at 209-10.) According to Bressler, the bending of the plastic allows it to absorb energy that is released when the bent piece is let go. (Id. at 210:3-5.) Bressler also testified that living hinges have memory, or "the propensity that a plastic part has to go back to the shape it was in originally molded into." (Id. at 210:23-211:1.) Dr. Mary C. Boyce ("Dr. Boyce"), Tyco's expert, also testified that a spring has a broad series of definitions and can include coiled springs, over-center springs, cantilever springs, and living hinges. (D.I. 376 at 698-699:14.) Dr. Boyce further testified that the process of bending the plastic that makes up a living hinge imparts energy to it, which is stored in the plastic. (D.I. 375 at 601:22-25.) The living hinges have memory and, once bent, this memory allows them to relax to their original position and release the energy imparted during the bending process. (Id. at 602:12-603:16.)

Dr. Garris testified similarly to Dr. Boyce regarding the properties of springs and, specifically living hinges. (See D.I. 375 at 368:1-371:4.) Dr. Garris further explained his opinion regarding whether the living hinges of Tyco's product are springs. Specifically, Dr. Garris testified that Tyco's products contain a spring element, the living hinges. (Id. at 382:10-15, 385:16-25, 388:11-25.) He reached his opinion by inspecting the product, understanding how it was manufactured, and working with it. (Id. at 375 at 374:12-16.) Dr. Garris also showed the jury how he examined the Monoject Magellan devices. (See id. at 391:1-392:13.) During this demonstration, Dr. Garris deployed the needle guard past the latch toward the needle tip. (Id. at 391:24-392:3.) Dr. Garris then checked to see if the guard had "springiness" by pressing the guard in the direction of the needle hub and compressing the hinged arms. (Id. at 392:4-11.) When he released the hinged arms, the guard moved in the direction of the needle tip. (Id.; see id. at 405:4-10.) Based on this evidence, the jury could have reasonably found that the living hinges of Tyco's Monoject Magellan devices are springs.

### B. Whether a Reasonable Jury Could Find that Tyco's Monoject Magellan Devices Contain a Spring that by Itself Moves the Guard Toward the Needle Tip Once Unlatched

Tyco next argues that BD failed to prove that there is any spring which by itself moves the guard toward the needle tip after unlatching. Although a close issue, the court disagrees, because BD adduced enough circumstantial evidence from which the jury could reasonably conclude that the living hinges of Tyco's products are springs that, by themselves, move the guard toward the needle tip once unlatched.[2] "A patentee may prove direct infringement . . . by either direct or circumstantial

---

[2] The court agrees with Tyco that BD's direct evidence regarding the movement of the guard is insufficient to support the jury's finding of infringement. BD offers the following as direct evidence of movement of the guard by the spring itself: (1) the jury's examination of the devices; (2) Dr. Boyce's videos and admissions; and (3) Dr. Garris' testimony regarding the spring assist. The court finds that none of this evidence carries the day. First, the jury's

evidence. *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1374 (Fed. Cir. 2005); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986). There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable *per se*." *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) (citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960) for the proposition that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").

In the present case, BD adduced testimony from both fact and expert witnesses regarding the presence of a latch on Tyco's Monoject Magellan devices and the bias of the hinged arm against the latch. Mark Ferguson ("Ferguson") testified that Tyco's Monoject Magellan devices contain a latch, which holds the hinged arm in a folded position during the initial parts of the assembly process. (D.I. 375 at 488:13-16.) Ferguson further testified that when Tyco's devices are first assembled, the hinged arm has a tendency to return to its relaxed state, or its molded state. (Id. at 488:18-23.) While Ferguson testified that he believed the stored energy in the hinged arm dissipates over time, he agreed that there may be a minimal amount of force remaining in the folded hinged arms when the devices are sold and used. (Id. at 488:24-489:21.) Ferguson also testified that any amount of

---

examination of the devices is not evidence. Rather, evidence is "[t]he collective mass of things, esp[ecially] testimony and exhibits, presented before a tribunal in a given dispute." Blacks Law Dictionary 595 (8th ed. 2004). Next, Dr. Boyce's videos and "admissions" are not sufficient to support the jury's verdict. While Dr. Boyce did admit she observed some motion when she cut the latch off of the needles in her experiments, she further explained that the configuration in the video is "nowhere near [the] over-the-latch configuration" that is required by the claims. (D.I. 376 at 677:23-680:11.) BD did not challenge Dr. Boyce's explanation for the movement or characterization of it as movement that occurs prior to unlatching. Finally, Dr. Garris' testimony regarding the spring assist of Tyco's Monoject Magellan devices is entitled to little, if any, weight, because it is directed to a combination of forces that cause movement of the guard, not the spring by itself. (See D.I. 375 at 394:10-395:13, 418:15-19, 440:21-24, 448:2-449:17.)

energy or stress that remained in the hinged arm would be biased against the latch. (Id. at 489:24-490:8.)

Richard Fiser ("Fiser"), a Tyco employee, agreed that the Tyco devices contain a latch. (Id. at 529:22-530:6.) According to Fiser, the latch was used during the assembly process to hold the hinged arm in a retracted configuration, but that the latch performed a different function in the product as sold, namely to minimize the potential for some kind of external impact to dislodge and accidentally move the shield. (Id. at 530:8-531:6; 578:9-11.) Dr. Garris also testified regarding the presence of the latch and bias of the living hinges in Tyco's Monoject Magellan devices. Specifically, Dr. Garris testified that the latch hooks onto a channel formed when the proximal segment of the arm is folded all the way back, holding the hinged arm into its retracted position. (Id. at 386:21-387:1.) In addition, Dr. Garris opined that energy is imparted to the hinged arm in the Tyco devices when it is folded and the latch restrains that energy, holding back the spring force and preventing the hinged arm from deploying. (Id. at 388:2-10; 404:7-11.) With respect to bias, Dr. Garris testified that the living hinges of the hinged arm were biased against the latch, or had the tendency to move the guard toward the tip of the needle cannula. (Id. at 390:6-20; 393:25-394:9.) Given the foregoing circumstantial evidence, the court concludes that it was reasonable for the jury to infer that the living hinges of Tyco's Monoject Magellan devices contain a spring that by itself moves the guard toward the needle tip once unlatched.[3]

---

[3] Tyco, citing this court's decisions in *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, C.A. No. 02-148, 2004 WL 2127192 (D. Del. Sept. 14, 2004) and 2004 WL 2898061 (D. Del. Dec. 14, 2004), complains that Dr. Garris' testimony was not in the nature of expert testimony, because he did no scientific tests and made no measurements. The court disagrees and finds *PharmaStem* distinguishable. In *PharmaStem*, the court concluded that the plaintiff's expert did not testify to scientific, technical, or other specialized knowledge and, further, that the testimony was not helpful to the trier of fact, as required by Rule 702 of the Federal Rules of Evidence.

## IV.   CONCLUSION

For the reasons discussed above, the court will deny Tyco's motion for judgment as a matter of law.

Dated: October 17, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

FILED
OCT 17 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

---

2004 WL 2127192, at *10 (citation omitted). The court reached its conclusion, in part, because the plaintiff's expert did not review or analyze any of the defendants' accused products. Instead she simply relied on representations in the defendants' marketing materials, which the court determined was no more than a lay person's interpretation. *Id.* at *11. Here, Dr. Garris did not rely on Tyco's marketing materials, but tested Tyco's Monoject Magellan devices by deploying the guard or shield over the latch. Dr. Garris also provided testimony as to the characteristics of a spring and types of springs based on his work in the field mechanical engineering. Moreover, Tyco's own expert, Dr. Boyce, "did many experiments" where she deployed the shield and demonstrated those experiments to the jury. (D.I. 375 at 606:7-608:8; 608:18-609:6; 613:7-10; 674:24-677:1.)

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON DICKINSON AND COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 02-1694 GMS |
| ) | |
| TYCO HEALTHCARE GROUP LP, ) | |
| ) | |
| Defendant. ) | |

### ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Tyco's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) (D.I. 359) is DENIED.

Dated: October 17, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

FILED
OCT 17 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE