IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON DICKINSON AND COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 02-1694 GMS |
| ) | |
| TYCO HEALTHCARE GROUP LP, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I.  INTRODUCTION**

1. This matter comes before the court on the post-trial motions of Becton Dickinson and Company ("BD"), for an award of damages and prejudgment interest, and for entry of a permanent injunction. Much of the factual and procedural background of this matter has been recited extensively in the court's prior Memoranda and Orders. As such and because the court writes primarily for the parties, the court will address only the relevant facts herein.

2. At the original trial of this matter, in October, 2004, the jury returned a verdict in favor of BD on its claim for infringement of United States Patent No. 5,348,544 (the "'544 patent" or "patent-in-suit"). The verdict included the following damages award for BD: (1) $4,204,423 in lost profits for 80% of Tyco Healthcare Group, LP's ("Tyco") sales of its Monoject Magellan Safety Syringe Needle (the "Magellan safety needle") from January 1, 2003 through December 31, 2003; (2) a reasonable royalty of $236,498 for the remaining 20% of Magellan safety needle sales; and (3) a reasonable royalty rate of $0.10 per unit for the Monoject Magellan Safety Blood Collector (the "Magellan blood collector"). Tyco filed post-trial motions relating to the damages award and also filed a motion for a new trial on

infringement.

3. On March 31, 2006, the court granted Tyco's motion for a new trial on the infringement issue, but denied Tyco's post-trial motions with respect to damages. The court scheduled the retrial for November 2007. Prior to the re-trial, the parties entered into a Stipulation and Order Regarding Damages (the "Damages Stipulation"). The court entered the Damages Stipulation on November 21, 2007. (D.I. 332.)

4. On November 30, 2007, the jury returned a verdict in favor of BD, finding that Tyco's Magellan safety needle and Magellan blood collector devices infringe the patent-in-suit.[1] On December 20, 2007, BD filed the motions for an award of damages and prejudgment interest and a permanent injunction that are presently before the court. The court will address each motion in turn.

## II. DISCUSSION

### A. Motion for Damages and Prejudgment Interest

5. As previously stated, BD filed a motion for an award of damages and prejudgment interest. On March 7, 2008, Tyco filed an answering brief, partially opposing BD's motion. Tyco does not dispute BD's inclusion of a reasonable royalty amount for 20% of Tyco's Magellan safety needle sales and a reasonable royalty amount for its Magellan blood collector sales. Thus, Tyco challenges BD's calculation of lost profits damages for the Magellan safety

---

[1] After the infringement re-trial, Tyco notified BD that it was planning to launch "Next Generation" blood collector products. On January 25, 2008, the parties filed a stipulation and order regarding the "Next Generation" blood collector products (D.I. 364), which the court entered on January 28, 2008. The stipulation and order provides that Tyco's "Next Generation" blood collector products are within the scope of the infringement judgment entered on December 11, 2007.

2

needles from January, 2004 and thereafter. Additionally, Tyco challenges BD's prejudgment interest rate.

6. Tyco first argues that BD's lost profit numbers are inflated because they do not account for the additional costs associated with significantly increasing BD's production capacity over the 2004-2007 timeframe. Tyco explains that its sales of Magellan safety needles have increased many times over since the original trial and BD does not currently have the manufacturing capacity to make the additional sales.

7. BD counters with the Damages Stipulation and argues that it controls the calculation of damages.

8. After having considered both parties' submissions, the court agrees with BD. During the pretrial conference for the infringement re-trial, BD argued that it should be permitted to present evidence on damages in order to "ensure it recovered the full range of damages and not to be limited to the period before 2004." (D.I. 388 at 3.) Tyco disagreed and objected to the presentation of evidence on damages. The parties, in an attempt to resolve the disagreement, negotiated the Damages Stipulation.

9. The Damages Stipulation specifically states that damages for the period from January 1, 2004 through the *end of the litigation* shall be calculated in a particular manner, which is set forth in summary fashion here: (1) Tyco will provide a sworn declaration concerning the total number of units of Magellan safety needles sold from January 1, 2004 to the end of the litigation; (2) for purposes of calculating BD's incremental profits for the period after December 31, 2003, the same format used by BD's damages expert, Dr. G. Stephen Jizmagian ("Dr. Jizmagian"), as reflected in PTX 392 shall be used; (3) BD shall provide to

Tyco a sworn declaration identifying the average sales price (ASP) and average unit cost (AUC) for each of the "BD equivalent" units identified in PTX 392, page 2, for each year from 2004 through the end of the litigation; (4) BD shall provide to Tyco an explanation of the assumptions it used and documentation sufficient to support its calculations with respect to the AUC data; and (5) the updated ASP and AUC data supplied by BD shall be used in calculating lost profits for the period following December 31, 2003 according to the format set forth in PTX 392. The Damages Stipulation further provides that BD shall be awarded lost profits in an amount equal to 80% of the incremental profits calculated in the above-described manner. (D.I. 332 at 1-2.)

10. The Damages Stipulation does not provide for additional costs associated with significantly increasing BD's production capacity over the 2004-2007 timeframe. Tyco could have negotiated a different method for calculating damages, but stipulated to the method described in the Damages Stipulation – that is, the method used in the first trial. Here, BD's expert, Dr. Jizmagian, "calculated damages in accordance with the procedures set forth in the Damages Stipulation." (D.I. 371 Ex. B-2 at ¶ 6.) Thus, the court will award BD its lost profits damages request for Tyco's sales of the Magellan safety needle.[2]

11. Tyco next argues that the court should reject BD's prejudgment interest rate, which uses the

---

[2] Tyco does not explicitly request to rescind the Damages Stipulation. However, it should be noted that "courts encourage parties to enter into stipulations to promote judicial economy by narrowing the issues in dispute during litigation. *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) (citing *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995)). "Allowing parties easily to set aside or modify stipulations would defeat this purpose, wasting judicial resources and undermining future confidence in such agreements. Thus, '[i]t is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside.'" *Id.* (citation omitted).

prevailing average prime rate, compounded quarterly, in favor of the Treasury bill rate, compounded annually.

12. Section 35 U.S.C. § provides for the calculation of damages "together with interest . . . as fixed by the court." In patent infringement cases, "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *General Motors v. Devex Corp.*, 461 U.S. 648, 657 (1983).

13. "'The Federal Circuit has given district courts great discretion' when determining the applicable interest rate for an award of prejudgment interest." *IPPV Enterprises, LLC v. EchoStar Comm'n Corp.*, No. Civ. A. 99-577-KAJ, 2003 WL 723260, at *3 (D. Del. Feb. 27, 2003) (citation omitted). "Courts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *IMX, Inc. v. Lending Tree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (citing *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993), *aff'd*, 16 F.3d 421 (Fed. Cir. 1993)). Accordingly, the court will order Tyco to pay prejudgment interest at the prime rate, compounded quarterly.

### B. Motion for a Permanent Injunction

14. BD also filed a motion for a permanent injunction seeking to enjoin Tyco's continued infringement of the patent-in-suit, which Tyco opposes. Tyco contends that BD has not established it is entitled to injunctive relief.

15. A district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

35 U.S.C. § 283. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

16. "Courts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor." *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, --- F. Supp. 2d ---, 2008 WL 4397476, at * 3 (D. Del. 2008). Here, BD sells its SafetyGlide product,[3] while Tyco continues to sell its Magellan products. Further, Tyco has not indicated that it will remove its products from the market. Further, although Tyco attempts to argue to the contrary, it concedes that it is BD's direct competitor in the single-handed shielding safety needle market platform.[4] (See D.I. 379, at 13.) According to Tyco, "there is no doubt that the Magellan safety needle competes with BD's SafetyGlide needle," (id. at 7) and "the Magellan safety needle has taken sales away

---

[3] BD has not licensed the '544 patent to any person or entity. (D.I. 369 ¶ 6.)

[4] Tyco defines BD's patented technology very narrowly, as relating to only the "spring means" element. The court disagrees. The court has previously stated, and Tyco has not disputed, that the '544 patent is generally directed toward a single-handed actuated safety shield used to prevent accidental needle sticks to health care workers. In addition, during the course of the trial, Tyco conceded that its Magellan safety needle met every element of the patent-in-suit but the spring means element. Thus, the court rejects Tyco's argument to limit the invention to the "spring means" limitation of the patent-in-suit.

from BD." (Id. at 13.) Thus, Tyco and BD are direct competitors.[5]

17. Further, BD has lost market share to Tyco as a result of Tyco's sales of Magellan products. Between the time of the Magellan safety needle launch and the last quarter of 2007, BD's market share dropped by approximately 40%. (D.I. 369 ¶ 14.) BD also lost customer accounts as a result of Tyco's sales of Magellan safety needles, including accounts with UCLA, the University of Illinois, Allina Hospital in Minnesota, and Hahnemann University in Philadelphia. (Id. ¶ 21.) Given the foregoing, the court finds that BD has suffered irreparable harm.

18. The court next finds that legal remedies are not adequate to compensate BD for Tyco's infringement of the patent-in-suit. The statutory right to exclude represents a tangential benefit associated with patent rights that cannot be quantified in monetary damages. *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (citation omitted). Indeed, as previously mentioned, BD and Tyco are head-to-head competitors in the single-handed shielding safety needle market, and BD has a right to exclude its rival from using its proprietary technology. *Novozymes A/S v. Genecor Intern., Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007).[6]

---

[5] While Tyco argues that the Portex Needle-Pro also competes in the same market, there is no record evidence to indicate Portex's position in that market.

[6] Tyco argues that BD has an adequate remedy at law because BD admits it could not supply its SafetyGlide needles to all of Tyco's customers for a period of time until it can increase its manufacturing capacity. Thus, Tyco argues that BD may not achieve sales and profits corresponding to the continuing number of Magellan safety needles now being sold, but would be able to recoup lost profits if the court denies the requested injunction, because Magellan safety needle sales would continue. The court, however, finds this argument irrelevant to whether BD has an adequate remedy at law.

19. With respect to the balance of hardships, BD cites its loss of market share, sales, and goodwill associated with Tyco's infringement. Tyco, while conceding that an injunction will not drive it out of business, contends that an injunction would hurt its safety product business a great deal, because it would remove the only needle-based safety devices from Tyco's product line. Tyco further contends that its business relations with customers would be harmed, because those customers would immediately have to look for a new supplier, especially those customers that already have ordered Tyco Magellan products. While a close question, the court finds that the scales tip in favor of BD. Tyco's business relationships may be harmed by an injunction, but that is the risk that Tyco took when it placed a potentially infringing product on the market and continued to make sales of that product.

20. Tyco further argues that the public interest is not served by an injunction, because its products are safer than BD's SafetyGlide products. Tyco reasons that the public is entitled to the best protection from blood borne illnesses and that its products offer that protection. The court is not persuaded, given Tyco's failure to cite anything – the record, safety guidelines, statistics – to support its argument. Moreover, as this court has previously explained, "it is almost redundant to note the substantial interest in enforcing valid United States patents, while the court perceives no countervailing harm to the public [– such as that the infringing products are medically necessary or that their removal from the stream of commerce would harm the public – ] in granting the requested injunctive relief." *Fisher-Price*, 279 F. Supp. 2d at 528. Accordingly, after having analyzed the four factors articulated in *eBay*, the court concludes that Tyco's Magellan safety needle should be enjoined from

infringing the '544 patent.[7]

21. Finally, Tyco requests a stay of the injunction pending appeal to the United States Court of Appeals for the Federal Circuit. Such a stay may be entered upon a showing by the movant of four criteria: (1) a strong showing that it is likely to succeed on the merits; (2) irreparable harm to the movant absent a stay; (3) no substantial injury to the other parties interested in the proceeding; and (4) no harm to the public interest. *Id.* at 529 (citing *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94 (D. Del. 1987)).

22. After having considered the parties arguments, the court is not persuaded to grant a stay in this action. First, the court notes that Tyco's brief mentions a stay of the injunction in passing when addressing the recent developments in the re-examination proceeding for the patent-in-suit, which goes to the first prong of the analysis. Further, while it may be the case that Tyco has raised a substantial question regarding infringement, given that the Patent Office's recent construction of the "spring means" term is at odds with the court's construction, Tyco has failed to address the remaining stay factors in its briefing. For example, Tyco has not argued or put forth any evidence that it will suffer irreparable harm absent a stay or that a stay will not injure BD. *See Standard Havens*, 897 F.2d at 516

---

[7] The injunction will issue as to Tyco's Magellan safety needle products, but not to Tyco's Magellan blood collector products or Next Generation blood collector products. The court finds that BD has failed to meet the *eBay* factors with respect to the blood collector products. Specifically, BD does not provide any evidence of irreparable harm in the form of lost sales, lost market share, lost goodwill or reputation with respect to the blood collector products. Nor does BD submit any evidence that monetary damages are insufficient to compensate it for Tyco's infringement, that the balance of harms tips in its favor, and the public interest favors an injunction.

(finding the issue of whether the court should stay the judgment pending appeal a close question when the infringer raised a substantial legal question and demonstrated irreparable harm in the form of bankruptcy and possible extinction). Accordingly, the court will deny Tyco's request for a stay.

Therefore, IT IS HEREBY ORDERED that:

1. BD's Motion for an Award of Damages and Prejudgment Interest (D.I. 362) is GRANTED.

2. The court awards BD damages in the amount of $50,723,061 based on Tyco's sales of Magellan safety needles and Magellan blood collectors, which includes $42,340,319 in lost profits damages for Tyco's sales of Magellan safety needles.

3. The court awards BD prejudgment interest in the amount of $7,721,183, based on the prevailing prime rate, compounded quarterly.

4. BD's request for a post-verdict accounting of damages and interest that BD has incurred from the sale of Tyco's Magellan safety needle, Magellan blood collector, and Next Generation blood collector products since October 7, 2007, is GRANTED.

5. BD's Motion for Entry of a Permanent Injunction (D.I. 362) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Tyco's Monoject Magellan safety needle products and DENIED with respect to Tyco's Monoject Magellan blood collector products and Next Generation blood collector products.

6. The court will enter BD's proposed Order of Permanent Injunction with the following modification: BD shall remove all paragraphs and references to the Monoject Magellan blood collector products and Next Generation blood collector products from the proposed Order and resubmit it within five (5) days of the date of this Order.

Dated: October 29, 2008

CHIEF UNITED STATES DISTRICT JUDGE

FILED
OCT 29 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE